Joel E. Elkins (SBN 256020)
jelkins@weisslawllp.com
**WEISSLAW LLP**
9100 Wilshire Blvd. #725 E.
Beverly Hills, CA 90210
Telephone: 310/208-2800
Facsimile: 310/209-2348

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL PARSHALL,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>AMERICAN RIVER BANKSHARES, NICOLAS C. ANDERSON, KIMBERLY A. BOX, CHARLES D. FITE, JEFFERY OWENSBY, JULIE A. RANEY, DAVID E. RITCHIE, JR., WILLIAM A. ROBOTHAM, and PHILIP A. WRIGHT,<br><br>　　　　Defendants. | Case No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff Paul Parshall ("Plaintiff"), on behalf of himself and all others similarly situated, upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

- 1 -
COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

## NATURE OF THE ACTION

1. This is an action brought by Plaintiff against American River Bankshares ("AMRB" or the "Company") and the members of AMRB's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which AMRB will be acquired by Bank of Marin Bancorp ("BMRC") through its wholly owned subsidiary BMRC Mercury, Inc. ("Merger Sub") (the "Proposed Transaction").

2. On April 19, 2021, AMRB and BMRC issued a joint press release announcing that they had entered into an Agreement to Merge and Plan of Reorganization dated April 16, 2021 (the "Merger Agreement") to sell AMRB to BMRC. Under the terms of the Merger Agreement, each holder of AMRB common stock will receive 0.575 shares of BMRC common stock for each share of AMRB common stock they own (the "Merger Consideration"). The Proposed Transaction is valued at approximately $134.5 million.

3. On June 28, 2021, AMRB filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that AMRB stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) the Company's and BMRC's financial projections; and (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, Piper Sandler & Co. ("Piper Sandler"). Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. In short, unless remedied, AMRB's public stockholders will be irreparably harmed because the Proxy Statement's material misrepresentations and omissions prevent them from making

a sufficiently informed voting decision on the Proposed Transaction. Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

**JURISDICTION AND VENUE**

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. §1331 (federal question jurisdiction).

6. The Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391 because: (i) the Company is headquartered in this District; (ii) one or more of the defendants either resides in or maintains executive offices in this District; and (iii) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

**THE PARTIES**

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of AMRB.

9. Defendant AMRB is a California corporation, with its principal executive offices located at 3100 Zinfandel Drive, Rancho Cordova, California 95670. The Company is the bank holding company for its wholly owned subsidiary, American River Bank ("American River Bank" or the "Bank"). AMRB's common stock trades on the Nasdaq Global Select Market under the ticker symbol "AMRB."

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

10. Defendant Nicolas C. Anderson ("Anderson") has been a director of the Company since 2018.

11. Defendant Kimberly A. Box ("Box") has been a director of the Company since 2012.

12. Defendant Charles D. Fite ("Fite") has been Chairman of the Board since 2001 and a director of the Company since 1993.

13. Defendant Jeffery Owensby ("Owensby") has been a director of the Company since 2016.

14. Defendant Julie A. Raney ("Raney") has been a director of the Company since 2019.

15. Defendant David E. Ritchie, Jr. ("Ritchie") has been President, Chief Executive Officer ("CEO"), and a director of the Company since 2017.

16. Defendant William A. Robotham ("Robotham") is Vice Chairman of the Board and has been a director of the Company since 2004.

17. Defendant Philip A. Wright ("Wright") has been a director of the Company since 2009.

18. Defendants identified in paragraphs 10-17 are referred to herein as the "Board" or the "Individual Defendants."

**OTHER RELEVANT ENTITIES**

19. BMRC is a California corporation, with its principal executive offices located at 504 Redwood Blvd., Suite 100, Novato, California 94947. It is the holding company for its wholly owned subsidiary, Bank of Marin ("Bank of Marin"). A leading business and community bank in the San Francisco Bay Area, with assets of $3.1 billion as of March 31, 2021, Bank of Marin has 21 branches and 7 commercial banking offices located across 7 Bay Area counties. Bank of Marin provides commercial banking, personal banking, specialty lending and wealth management and trust services. BMRC's common stock trades on the Nasdaq Capital Market under the ticker symbol "BMRC."

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

# SUBSTANTIVE ALLEGATIONS

**Background of the Company**

20. American River Bank was incorporated and commenced business in Fair Oaks, California, in 1983, and thereafter moved its headquarters to Sacramento, California in 1985. American River Bank operates four full service offices in Sacramento County including the main office located at 1545 River Park Drive, Suite 107, Sacramento, and branch offices in Sacramento and Gold River; one full service office in Placer County, located in Roseville; two full service offices in Sonoma County in Healdsburg and Santa Rosa; and three full service offices in Amador County in Jackson, Pioneer, and Ione.

21. American River Bank's primary business is serving the commercial banking needs of small to mid-sized businesses within those counties listed above. American River Bank accepts checking and savings deposits, offers money market deposit accounts and certificates of deposit, makes secured and unsecured commercial, secured real estate, and other installment and term loans and offers other customary banking services. American River Bank also conducts lease financing for most types of business equipment, from computer software to heavy earth-moving equipment. American River Bank owns 100% of two inactive companies, ARBCO and American River Mortgage. ARBCO was formed in 1984 to conduct real estate development and has been inactive since 1995. American River Mortgage has been inactive since its formation in 1994. The Company's principal source of revenue comes from interest income. As of December 31, 2020 and December 31, 2019, American River Bank held $29,000,000 in certificates of deposit for the State of California.

22. On April 19, 2021, AMRB announced its first quarter 2021 financial results. Net income was $2.6 million, or $0.45 per diluted share for the first quarter of 2021 compared to $1.4 million, or $0.24 per diluted share for the first quarter of 2020. Net interest income was $7.1 million in the first quarter of 2021, compared to $6.2 million in the first quarter of 2020. Pretax, pre-provision

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

income increased $1.2 million, or 51.0%, to $3.7 million in the first quarter of 2021, compared to $2.4 million in the first quarter of 2020. Defendant Ritchie commented on the results, stating:

> Despite the challenges our markets continue to face due to COVID-19, we are optimistic that better days are ahead. The restrictions in our markets are easing and the vaccine distribution is accelerating. This optimism is further accentuated by the increased profitability, deposit growth, and excellent credit quality that we experienced in the first quarter of 2021.

23. April 22, 2021, AMRB announced a quarterly cash dividend of $0.07 per share payable on May 19, 2021 to shareholders of record on May 5, 2021.

**The Proposed Transaction**

24. On April 19, 2021, AMRB and BMRC issued a joint press release announcing the Proposed Transaction. The press release states, in relevant part:

> NOVATO, Calif. and SACRAMENTO, Calif., April 19, 2021 -- Bank of Marin Bancorp, "BMRC" (Nasdaq: BMRC), parent company of Bank of Marin, "the Bank," and American River Bankshares "AMRB" (Nasdaq: AMRB), parent company of American River Bank, today announced the signing of a merger agreement. American River Bankshares has ten branches across the Greater Sacramento, Amador and Sonoma County regions, assets of $916.1 million, total deposits of $788.6 million, and total loans of $475.4 million as of March 31, 2021.
>
> "This merger brings together two exceptional institutions that share complementary values and disciplined fundamentals," said Russell A. Colombo, President and Chief Executive Officer of Bank of Marin Bancorp and Bank of Marin. "Bank of Marin will be able to expand its franchise by delivering the same legendary service that is the hallmark of a community bank on a regional scale."
>
> David E. Ritchie, Jr., President and Chief Executive Officer of American River Bankshares, commented, "We are excited for the opportunity to join one of the strongest banks in the region. We believe our clients, shareholders and employees will benefit from Bank of Marin's history of profitable growth and expertise in successfully executing acquisitions. We believe their community banking model, culture and commitment to high-quality client service make Bank of Marin an excellent partner for American River Bank."
>
> The transaction will be immediately accretive to BMRC's earnings, adding to shareholder value. AMRB shareholders will receive a fixed exchange ratio of 0.575 shares of BMRC common stock for each share of AMRB common stock outstanding. Based on BMRC's closing stock price of $39.06 on April 16, 2021, the transaction is valued at $134.5 million, or $22.46 per share of AMRB common stock. Such value

will fluctuate with changes in the stock price of BMRC. The total transaction value includes the value of AMRB options being paid in cash by BMRC.

The transaction is expected to close in the third quarter of 2021, and upon closing the Bank will have approximately $4.0 billion in assets and operate thirty-one branches in ten counties, including Alameda, Amador, Contra Costa, Marin, Napa, Placer, Sacramento, San Francisco, San Mateo, and Sonoma. Upon closing, BMRC will add two board members from AMRB to its board. BMRC's and AMRB's boards of directors have unanimously approved the acquisition agreement. Additionally, directors of AMRB and BMRC have entered into agreements whereby they have committed to vote their shares in favor of the transaction. The closing of the acquisition is subject to satisfaction of customary closing conditions, including regulatory approvals and approval of BMRC and AMRB shareholders.

Bank of Marin Bancorp received financial advisory services and a fairness opinion from Keefe, Bruyette & Woods, A Stifel Company, and Stuart Moore Staub served as legal counsel. American River Bankshares received financial advisory services and a fairness opinion from Piper Sandler & Co., and Manatt, Phelps & Phillips LLP served as legal counsel.

**Insiders' Interests in the Proposed Transaction**

25. AMRB insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of AMRB.

26. Notably, certain Company insiders will secure positions for themselves with the combined company. Under the terms of the Merger Agreement, upon completion of the merger, BMRC will nominate for election to its board two existing members of the Board. Specifically, BMRC and AMRB determined in June, 2021 that the two existing directors of the Board who will be appointed or elected to the BMRC board effective as of the effective time of the merger will be defendants Anderson and Fite.

27. Moreover, AMRB insiders stand to reap substantial financial benefits for securing the deal with BMRC. Pursuant to the Merger Agreement, all outstanding Company restricted stock will vest and convert into the right to receive the Merger Consideration. The following table sets forth the

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

estimated aggregate amount that would be realized by AMRB's non-employee directors in respect of their unvested AMRB equity awards:

| Name | Restricted Shares (#) | Value ($) |
|---|---|---|
| **Non-Employee Directors**[(1)] | | |
| Nicolas C. Anderson | 3,266 | $ 64,308 |
| Kimberly A. Box | 3,266 | $ 64,308 |
| Charles D. Fite | 3,711 | $ 73,070 |
| Jeffery Owensby | 3,266 | $ 64,308 |
| Julie A. Raney | 1,661 | $ 32,705 |
| William A. Robotham | 3,266 | $ 64,308 |
| Philip A. Wright | 3,266 | $ 64,308 |

28. Additionally, if they are terminated in connection with the Proposed Transaction, AMRB's named executive officers are set to receive substantial cash severance payments in the form of golden parachute compensation, as set forth in the following table:

| Executive Officer | Base Salary ($)(1) | Cash Incentive Compensation ($)(2) | COBRA Payments ($)(3) | Salary Continuation Plan Payments ($)(4) | Restricted Stock ($)(5) | Stock Options ($)(6) | Total Termination Benefits ($)(7) |
|---|---|---|---|---|---|---|---|
| David E. Ritchie, Jr. (8) | $ 730,000 | $ 442,664 | $ 47,952 | — | $ 213,715 | — | $ 1,434,331 |
| Mitchell A. Derenzo (9) | 397,500 | 46,375 | — | $ 525,000 | 138,834 | $ 49,667 | 1,157,376 |
| Kevin B. Bender (9) | 390,000 | 45,500 | — | 525,000 | 138,834 | 152,476 | 1,251,810 |
| Dan C. McGregor (9) | 361,500 | 42,175 | — | — | 110,185 | — | 513,860 |

**The Proxy Statement Contains Material Misstatements or Omissions**

29. The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to AMRB's stockholders. The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction.

30. Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) the Company's and BMRC's financial projections; and (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Piper Sandler.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

*Material Omissions Concerning the Company's and BMRC's Financial Projections*

31. The Proxy Statement omits material information regarding the Company's and BMRC's financial projections.

32. The Proxy Statement sets forth that:

> In preparing its analyses, Piper Sandler used publicly available mean analyst earnings per share estimates for AMRB for the quarters ending June 30, 2021, September 30, 2021 and December 31, 2021 as well as the year ending December 31, 2022, and estimated annual asset and earnings per share growth rates for the years ending December 31, 2023 through December 31, 2025, as directed by the senior management of AMRB. In addition, Piper Sandler used publicly available mean analyst earnings per share estimates for BMRC for the quarters ending June 30, 2021, September 30, 2021 and December 31, 2021 as well as the year ending December 31, 2022, and estimated annual asset and earnings per share growth rates for the years ending December 31, 2023 through December 31, 2025, as directed by the senior management of BMRC. Piper Sandler also received and used in its pro forma analyses certain assumptions relating to transaction expenses, purchase accounting adjustments and cost savings, as provided by the senior management of BMRC.

Proxy Statement at 48. The Proxy Statement fails, however, to disclose: (i) the mean analyst earnings per share estimates for the Company and BMRC for the quarters ending June 30, 2021, September 30, 2021, December 31, 2021 as well as the year ending December 31, 2022; (ii) estimated annual asset and earnings per share growth rates for the years ending December 31, 2023 through December 31, 2025 for both the Company and BMRC; and (iii) the pro forma financial impact of the Proposed Transaction on BMRC based on certain assumptions relating to transaction expenses, purchase accounting adjustments and cost savings, as provided by BMRC management

33. The omission of this material information renders the statements in the "Opinion of AMRB's Financial Advisor" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

*Material Omissions Concerning Piper Sandler's Financial Analyses*

34. The Proxy Statement omits material information regarding Piper Sandler's financial analyses.

35. The Proxy Statement describes Piper Sandler's fairness opinion and the various valuation analyses it performed in support of its opinion. However, the description of Piper Sandler's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, AMRB's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Piper Sandler's fairness opinion in determining whether to vote in favor of the Proposed Transaction.

36. With respect to Piper Sandler's *AMRB Comparable Company Analysis* and *BMRC Comparable Company Analysis*, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the comparable companies observed by Piper Sandler in the analysis.

37. With respect to Piper Sandler's *Analysis of Precedent Transactions*, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the transactions observed by Piper Sandler in the analysis.

38. With respect to Piper Sandler's *Net Present Value Analyses*, the Proxy Statement fails to disclose: (i) quantification of the Company's and BMRC's terminal values; (ii) quantification of the inputs and assumptions underlying the discount rates of 9.0% to 15.0% for the Company and 8.0% to 14.0% for BMRC; and (iii) the earnings per share estimates, growth rates, and dividends for both the Company and BMRC used in the analyses.

39. With respect to Piper Sandler's *Pro Forma Transaction Analysis*, the Proxy Statement fails to disclose: (i) the earnings per share estimates and growth rates used in the analysis; (ii) quantification of the specific accretion to BMRC's estimated earnings per share in the years ending December 31, 2022 through December 31, 2025 and BMRC's estimated tangible book value per share at December 31, 2025; and (iii) quantification of the dilution to BMRC's estimated tangible book value per share at close, December 31, 2022, and December 31, 2023.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

40. Without such undisclosed information, AMRB stockholders cannot evaluate for themselves whether the financial analyses performed by Piper Sandler were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction. In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can fully evaluate the extent to which Piper Sandler's opinion and analyses should factor into their decision whether to vote in favor of or against the Proposed Transaction.

41. The omission of this material information renders the statements in the "Opinion of AMRB's Financial Advisor" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

42. The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other stockholders of AMRB will be unable to make an informed voting decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

43. Plaintiff repeats all previous allegations as if set forth in full.

44. During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

45. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about the Company's and BMRC's financial projections and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Piper Sandler. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

46. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

47. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

48. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

**Claims Against the Individual Defendants for
Violations of Section 20(a) of the Exchange Act**

49. Plaintiff repeats all previous allegations as if set forth in full.

50. The Individual Defendants acted as controlling persons of AMRB within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of AMRB, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the

- 12 -
COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

51. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

52. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy Statement.

53. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

54. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

55. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, AMRB's stockholders will be irreparably harmed.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of AMRB, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to AMRB stockholders;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

| | | |
|---|---|---|
| Dated: July 8, 2021 | | **WEISSLAW LLP**<br>Joel E. Elkins |

By: */s/ Joel E. Elkins*

Joel E. Elkins
9100 Wilshire Blvd. #725 E.
Beverly Hills, CA 90210
Telephone: 310/208-2800
Facsimile: 310/209-2348
      -and-
Richard A. Acocelli
1500 Broadway, 16th Floor
New York, NY 10036
Telephone: 212/682-3025
Facsimile: 212/682-3010

*Attorneys for Plaintiff*